UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

    -against-

THURMEN RISHER,

**MEMORANDUM AND ORDER**
Case No. 1:19-CR-539 (FB) (JRC)

---

*Appearances:*
*For the United States of America:*
MICHAEL WALLACE GIBALDI
DOJ-USAO
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201

*For the Defendant:*
MIA EISNER-GRYNBERG
Federal Defenders of New York
One Pierrepont Plaza
16th Floor
Brooklyn, NY 11201

**BLOCK, Senior District Judge:**

Thurmen Risher is currently serving a sentence of 90 months' imprisonment for his role as getaway driver for six armed robberies in the fall of 2019. He is scheduled to be released from custody in July 2028, but has moved the Court to reduce his sentence to time served, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). For the reasons that follow, Risher's motion for compassionate release is granted.

**I.**

At the outset, it must be acknowledged that Risher has a long criminal history. According to the Presentence Report ("PSR") he has been incarcerated almost continuously since 1990. PSR, ¶ 56, ECF No. 117. Specifically, because of his repeated participation in armed robberies, he was incarcerated from 1990 to 1995, 1995 to 2002, 2002 to 2018. *Id.* Between September 19, 2019, and October 21, 2019, Risher served as the getaway driver in six armed robberies, the first five in Brooklyn and the sixth in Dover, New Hampshire. *Id.* ¶¶ 10–17. Risher was arrested in

Georgia on November 5, 2019. *Id.* ¶ 21. Because of his role in these robberies, he has been in federal prison since 2023 *Id.*

After his indictment, Risher was initially held at the Metropolitan Detention Center, but was released on bail because of COVID-19. While he out on the strictest level of home incarceration, his conduct was so exemplary that the Court twice modified his bond conditions to allow him the opportunity to attend a job training program and to obtain an internship. *See* ECF No. 51, 64, 69. Sixteen months after his release on bond, the Court removed his location monitoring entirely in recognition of his perfect compliance with the terms of his release. ECF No. 104. During this time, he worked with Exodus Transitional Community and volunteered with Man Up Inc., two organizations committed to supporting and aiding the formerly incarcerated. *See* Def's Sent'g Mem., Exs. E(1), E(2), ECF No. 123. Throughout his time on release, he also attended drug counseling sessions regularly and successfully maintained his sobriety after many years of drug use. *Id.*, Ex. E(4).

On May 24, 2021, Risher pleaded guilty to one count of Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Count Two of the Superseding Indictment), and one count of possessing and brandishing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Three of the Superseding Indictment).

On January 26, 2023, the Court sentenced Risher to the mandatory seven years for Count Three, and six months for Count Two, for a total sentence of 90 months. Despite his lengthy criminal history, the Court sentenced him below the Guidelines range in recognition of his impressive behavior prior to sentencing, and the substantial rehabilitative steps he had taken. *See* Sentencing Trans., ECF No. 129.  Because of the time he served at MDC, he is scheduled to be released in July 2028.

## II.

As the Court explained in *United States v. Tavarez*, 747 F. Supp. 3d 557 (E.D.N.Y. 2024), a motion for compassionate release requires a district court to "determine [whether] three independent, necessary requirements have been satisfied: (1) the defendant has exhausted administrative remedies; (2) an extraordinary and compelling reason exists for sentence reduction; and (3) the [18 U.S.C.] § 3553(a) factors warrant reduction." *Id*. at 559.  Analytically, once administrative remedies have been exhausted, the second requirement – whether extraordinary and compelling reasons are extant -- is a "gatekeeping requirement" before the court determines whether the 3553(a) factors warrant relief. *Rutherford v. United States*, 146 S. Ct. 1320, Slip Op. at 14 (2026).[1]

Risher proffers four extraordinary and compelling reasons to satisfy the gatekeeping requirement: his mother's ailing health and need for a full-time caretaker, his own health issues, the "unnecessarily punitive" conditions of his incarceration, and evidence of his rehabilitation. Of these, only his mother's need for a caretaker and his rehabilitation are worthy of serious consideration. Risher's personal health issues—high blood pressure, cardiomegaly, prediabetes, radiculopathy, a history of atopic dermatitis, and an elevated Prostate Specific Antigen—are all quite typical for a 53-year-old man and do not rise to the level of severity envisioned by the Guidelines, and the conditions of confinement are not an appropriate basis for compassionate release. *See* U.S.S.G. §§ 1B1.13(b).

His mother's health issues are another story. Risher's mother, Ms. Rosemary Rothwell, is wheelchair bound and requires assistance with most daily activities including bathing, dressing, eating, using the bathroom, and managing her medicine and doctors' appointments. *See* Def's

---

[1] The parties agree that the administrative remedies have been exhausted.

3

Exs. H, I, J, K, L, M, N. She currently receives assistance from a home health aide between the hours of 9AM and 3PM.  During the 18 hours when she is alone, she is confined to her bed and often incontinent. *Id.*, Ex. H-6. Def's Mot., 7, ECF No. 166.

One of the extraordinary and compelling reasons for compassionate release included in the Guidelines is the "incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent." U.S.S.G. § 1B.13(b)(3)(C). Risher argues that he is the only person who can care for his mother—as his siblings are unavailable and she evidently cannot afford a full-time aide—and that she is incapacitated within the meaning of the Guidelines.

In response, the Government contends that because "[m]any, if not all inmates, have aging and sick parents. . . [, such] circumstance is not extraordinary." *United States v. Diaz*, 768 F. Supp. 3d 369, 377 (E.D.N.Y. 2024) (quoting *United States v. Peeler*, No. 3:99-CR-00067-MPS-2, 2024 WL 1636710, at *2 (D. Conn. Apr. 16, 2024)). At oral argument, the Government repeatedly emphasized that the Supreme Court recently clarified that "extraordinary and compelling" circumstances are those that are "especially unusual and convincing," and argued that Ms. Rothwell's condition does not rise to this level. Oral Arg. Tr., 11. (quoting *Rutherford,* 146 S. Ct. 1320, Slip Op. at 11). As "unusual and convincing" are merely synonyms for extraordinary and compelling, this language provides no helpful depth or texture to the Court's understanding of the statutory language.[2]

---

[2] They are, in fact, the first synonyms listed in Meriam-Webster's thesaurus entries for the two words. "Extraordinary," *Merriam-Webster.com Thesaurus*, https://perma.cc/JX7H-7DUE; "Compelling," *Merriam-Webster.com Thesaurus*, https://perma.cc/P958-USJCA. Justice Scalia once identified "the retrograde practice of stringing out synonyms . . . [as a] bad habit," in statutory drafting. Scalia & Garner, *Reading Law: The Interpretation of Legal Texts*, 177 (St. Paul: Thomson/West, 2012). It is similarly of minimal use in statutory interpretation.

Regardless of the lexical niceties, Ms. Rothwell's health conditions, as well as her need for care, are extraordinary and compelling. Most inmates do *not* have parents who are bedridden and incontinent eighteen hours a day, and the facts here are clearly distinguishable from the cases cited by the Government where other family members were helping to care for the parent. *E.g. United States v. Larkin*, No. 19-CR-833 (SHS), 2025 WL 835865, at *1 (S.D.N.Y. Mar. 14, 2025) ("mother brought his grandmother to the doctor, that a grandson makes her dinner, and that a woman comes in twice a week to provide companionship and some housework"); *United States v. Baker*, No. 97-CR-0877 (JS), 2025 WL 2733358, at *6 (E.D.N.Y. Sept. 25, 2025) (defendant's sisters actively caring for mother). Unlike those cases, Ms. Rothwell's other children are unavailable to help her, *see* Def's Exs. Q, R, and her aide is only available six hours a day. Mr. Risher is asking to be released early from prison so that he can feed, bathe, clothe, and generally serve as full-time care aide for his mother. As Ms. Rothwell is seriously incapacitated and no other family members are available to care for her, her condition rises to the level envisioned by Guidelines § 1B1.13(b)(3)(C).

### III

Since the Court last considered a motion for compassionate release the Supreme Court has released two significant decisions affecting our § 3582 jurisprudence. *Rutherford v. United States*, 146 S. Ct. 1320 (2026) (non-retroactive sentencing amendment may not serve as an "extraordinary and compelling" justification for compassionate release); *Fernandez v. United States*, 146 S. Ct. 1292 (2026) (*habeas* is the vehicle for raising claims of actual innocence and not §3582; hence it is not an "extraordinary and compelling" reason for compassionate release).

While neither opinion touches directly on Risher's petition, at oral argument the Court and the parties discussed whether they would impact the broad contours of how the court should

interpret and apply § 3582. Oral Arg. Trans. 8–21. Defense Counsel correctly highlighted how *Rutherford* recognized the "heartland of compassionate release" as being "defined by the prisoner's personal circumstances . . . such as if there is an extraordinary change in an inmate's personal or family situation." *Rutherford*, Slip Op. at 10. Thus, nothing in *Fernandez* or *Rutherford* precludes the court from considering whether defendant's personal circumstances can rise to the level of an "extraordinary and compelling" circumstance. On the contrary the Supreme Court in *Rutherford* implicitly acknowledged that they could. *Id.* ("We need not decide whether there are reasons beyond personal circumstances that could qualify as "extraordinary and compelling."). Defendant has clearly established that his personal circumstances *vis a vis* his mother's debilitating health and her need for her son's aid satisfies the requisite "extraordinary and compelling" gatekeeping requirement. *See again,* U.S.S.G. § 1B.13(b)(3)(C).

Notably, the First Step Act does not allow consideration of "rehabilitation . . . alone" as an extraordinary and compelling reason for release. *United States v. Brooker*, 976 F.3d 228, 238 (2d Cir. 2020) (quoting 28 U.S.C. 994(t)). However, as the Court has previously recognized, "rehabilitation plus"—"meaning rehabilitation in conjunction with other appropriate factors"— could rise to the level of satisfying the "extraordinary and compelling" gatekeeping requirement. *United States v. Johnson*, 754 F. Supp. 3d 305, 311 (E.D.N.Y. 2024) (internal quotations omitted); *see United States v. Tavarez*, 747 F. Supp. 3d 557, 563-65 (E.D.N.Y. Sept. 4, 2024) (collecting cases in which Second Circuit district courts found a combination of rehabilitation and other factors warranted a sentence reduction).

There is a conceptual analytical dilemma. If rehabilitation is only a valid consideration when paired with a *plus factor*, does it actually count as a distinct "extraordinary and compelling"

reason justifying release, or is its scope limited to consideration under the 3553(a) factors once the gatekeeping requirement—like Defendant's personal circumstances—has been satisfied?

Regardless how this musing is eventually resolved, I consider rehabilitation to be the *sine quo non* of whether I will release a defendant from incarceration under the First Step Act, regardless of the defendant's personal circumstances. Simply put, I will not endanger the public's welfare by releasing someone from custody who has not satisfied me that he is truly rehabilitated.

Thus, I granted Walter Johnson's request for compassionate release even though I had sentenced him to multiple life sentences because of his remarkable rehabilitation while inside. *Johnson*, 754 F. Supp. 3d 305. While I also considered Johnson's sentencing under the three-strikes law, and my own consideration of acquitted conduct at sentencing, it was Johnson's rehabilitation that was most important in my decision. *Id.* at 310–316. Since his release, Johnson has become the poster child for the value of the First Step Act and its ability to give worthy prisoners a second chance to live constructive law-abiding lives. His rehabilitation and extraordinary service to his community since his release have been exemplary.

**IV**

As described above, Risher began his rehabilitation before serving his current sentence. And as the Court pondered at sentencing, there is no way to know "whether he would have rehabilitated himself on his own initiative, if not for intervention of the criminal justice system which. . . was the catalyst in this wonderful rehabilitation." Sent. Tr. 18:1–4, ECF No. 129. But thanks to this intervention, he continued to reform and grow during his time in prison. He has maintained a spotless disciplinary record since November 2020 and has completed seventeen educational courses. Def's Ex. F. Moreover, he requested to be transferred to FCI Allenwood Low so that he could participate in the Residential Drug Abuse Program ("RDAP").

Taken together, Risher's conduct while out on bond and during his extended time in federal custody reflects that he has been rehabilitated. Nonetheless, the court cannot consider granting compassionate release without "considering the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A)(i). Those factors are "(i) the nature and circumstances of the offense, (ii) the history and characteristics of the defendant, (iii) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment, (iv) the need to adequately deter criminal conduct, (v) the need to protect the public from the defendant, (vi) the need to provide the defendant with necessary rehabilitation, and (vii) the need to avoid unwarranted sentencing disparities among similar defendants." *United States v. Russo*, 643 F. Supp. 3d 325, 335 (E.D.N.Y. 2022) (citing 18 U.S.C. 3553(a)).

There is no question that Risher's criminal conduct was inexcusable and deplorable. And he was not an improvident youth when he committed his crimes. However, balancing the 3553(a) factors, it is evident that the purposes of incarceration—retribution, deterrence, incapacitation, and rehabilitation—have been achieved and that his personal reformation outweighs his past criminal behavior. *See Tapia v. United States*, 564 U.S. 319, 325, 131 S. Ct. 2382, 2387, 180 L. Ed. 2d 357 (2011). Risher has paid a significant price for his crimes, has finished paying restitution to his victims, *see* Satisfaction of Judgement, ECF No. 159, and has committed himself upon release to, in his own words, "start taking action into repairing instead of destroying." Def's Ex. E

In that regard, the Court finds the fourth factor weighs particularly in his favor. Releasing Risher will serve to deter future criminal conduct, insofar as he plans to work with at-risk youths and help them avoid making the same criminal mistakes that he has made in his life. The Court

has high expectations for Risher and believes that he is prepared to rejoin society as an upstanding citizen.

Walter Johnson has also submitted a powerful letter of support, wherein he notes not only Risher's commitment to growth and self-improvement but also his having pledged to "living a life of accountability, with a goal of helping others and avoiding any return to negative influences." Def's Ex. Q. Johnson also assures the Court that he will work closely with Risher upon his release. The Court expects Risher to follow in Walter Johnson's footsteps.

### Conclusion

Whether conceptualized as part of the First Step Act's gatekeeping requirement or the dominant 3553(a) factor, Risher's extraordinary rehabilitation (in addition to his family circumstances) warrants granting his application for a sentence reduction to time served. Upon his release from BOP custody, he will begin his two-year period of supervised release, during which all previously imposed conditions will apply.

**SO ORDERED.**

__/S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York

June 29, 2026

9